UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| DANIEL A. LARA, ) | |
| ) | |
| Plaintiff, ) | Case No. EDCV 06-00066 AJW |
| ) | |
| v. ) | MEMORANDUM OF DECISION |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of the Social ) | |
| Security Administration, ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

Plaintiff filed this action seeking reversal of the decision of defendant, the Commissioner of the Social Security Administration (the "Commissioner"), denying plaintiff's application for supplemental security income ("SSI") benefits. The parties have filed a Joint Stipulation ("JS") setting forth their contentions with respect to each disputed issue.

**Administrative Proceedings**

The parties are familiar with the procedural history of this case, which is summarized in the Joint Stipulation. [See JS 2]. Plaintiff filed an application for SSI benefits on October 30, 2003, alleging disability due to a compound fracture of the right arm and depression.

[Administrative Record ("AR") 14, 73]. Following an administrative hearing, plaintiff's application for benefits was denied in a November 9, 2005 written decision by Administrative Law Judge Joseph Schloss (the "ALJ"). [JS 2; AR 13-26]. The ALJ found that plaintiff retained the residual functional capacity ("RFC") for a significant range of light. The ALJ concluded that plaintiff was not disabled because he could perform work available in significant numbers in the national economy. [AR 25-26]. The Appeals Council denied plaintiff's request for review. [AR 5-7].

**Standard of Review**

The Commissioner's denial of benefits should be disturbed only if it is not supported by substantial evidence or if it is based on the application of incorrect legal standards. Ukolov v. Barnhart, 420 F.3d 1002, 1004 (9th Cir. 2005); Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002). Substantial evidence is more than a mere scintilla but less than a preponderance. Richardson v. Perales, 402 U.S. 389, 401 (1971); Thomas, 278 F.3d at 954. Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson, 402 U.S. at 401 (quoting Consolidated Edison Co. of New York v. N.L.R.B., 305 U.S. 197, 229 (1938)); Thomas, 278 F.3d at 954. The court is required to review the record as a whole, and to consider evidence detracting from the decision as well as evidence supporting the decision. Verduzco v. Apfel, 188 F.3d 1087, 1089 (9th Cir. 1999); Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." Thomas, 278 F.3d at 954 (citing Morgan v. Commissioner of Social Sec. Admin., 169 F.3d 595, 599 (9th Cir.1999)).

**Discussion**

**Medical opinion evidence**

Plaintiff contends that the ALJ did not properly evaluate the opinion of his treating physician, James Evans, M.D.

A treating physician's opinion is not binding on the Commissioner with respect to the existence of an impairment or the ultimate issue of disability. Tonapetyan v. Halter, 242 F.3d 1144, 1148 (9th Cir. 2001). Where the opinion of a treating or examining physician is uncontroverted, the ALJ must provide clear and convincing reasons, supported by substantial evidence in the record, for rejecting it. If contradicted by that of another doctor, a treating or examining source opinion may be rejected for specific and legitimate reasons that are based on substantial evidence in the record. Batson v. Commissioner of Social Sec. Admin., 359 F.3d 1190, 1195 (9th Cir. 2004); Tonapetyan, 242 F.3d at 1148-1149; Lester v. Chater, 81 F.3d 821, 830-831 (9th Cir. 1995).

The record includes treatment notes from Arrowhead Regional Medical Center ("ARMC") for the period from August 2003 until April 2005. [AR 185-206]. Prior to November 2003, plaintiff's progress notes do not mention subjective complaints or diagnoses related to his arm. In August 2003, he sought treatment for hepatitis C, and his diagnoses were uncontrolled diabetes mellitus, hepatitis C, obesity, alcohol abuse, and poor insight into his medical illness. [AR 200]. In August 2003, he presented for a follow-up and reported "doing well." [AR 199]. Diagnoses were hepatitis C and well-controlled diabetes. [AR 199]. On November 2003, after he filed his application for SSI benefits, plaintiff sought treatment at ARMC for complaints of right arm pain. [AR 198]. He reported that he had suffered a compound fracture in a car

accident 8 years earlier. He complained of pain and having problems stretching his fourth and fifth digits. On examination, the treating physician, Dr. Cortes, noted that plaintiff exhibited "good" range of motion, "good" flexion and extension of the forearm, "good" wrist flexion and extension, and "can flex and extend digits[;] 4th and 5th slow but can do it." [AR 198]. Plaintiff had reduced strength in his right hand. Dr. Cortes referred plaintiff for an orthopedic consultation and "possible [occupational therapy]." [AR 198].

In December 2003, plaintiff returned to ARMC and for the first time saw Dr. Evans, a family medicine practitioner. [AR 186, 197]. Dr. Evans commented that plaintiff was "here because his [disability] paperwork has to be filled out." [AR 197]. Plaintiff reported that his right forearm had been fractured and nearly severed during a 1994 car accident and that his forearm was reattached with extensive pinning and repair of tendons. He reported pain, especially in cold weather, and difficulty with doing "simple things" with his dominant right arm and hand. On examination, extensive scarring and skin grafting were noted. Plaintiff displayed "extremely limited mobility," was "unable to fully extend all five fingers on his right hand," and had "markedly diminished sensation." [AR 197]. The assessment was "open right forearm fracture, status post open reduction and internal fixation, as well as multiple tendon ruptures and neuropathy secondary to trauma." [AR 197]. Dr. Evans filled out a state disability form stating that plaintiff had been unable to do his "regular or customary work" since 1994 and was projected to remain unable to do so until December 2004. [AR 186].

In May 2004, plaintiff returned to Dr. Evans for "follow up for right arm disability." [AR 196]. On examination, there was a "well healed scar," "limited range of motion" in plaintiff's hands, and "some

4

crampiness that the plaintiff talks [sic]." [AR 196]. Dr. Evans completed a certificate of disability stating "[p]atient will not be able to return to previous employment," and explaining that "[t]his patient, in my opinion, is a poor candidate for job retraining due to being [right] handed with a right arm reattachment." [AR 185]. In June 2004, plaintiff's physical examination was unchanged. [AR 195]. He was prescribed pain medication and medication for "phantom" nerve pain. Plaintiff returned for follow-up visits and medication adjustments in October and November 2004 and April 2005. [AR 188-194].

The ALJ permissibly rejected Dr. Evan's December 2003 and May 2004 disability opinions. First, the ALJ noted that Dr. Evan's opinion and examination findings conflicted with those of other treating and examining sources. [See AR 16, 18-19, 22]. Notably, the only upper extremity finding documented by Dr. Cortes, who treated plaintiff only a month before Dr. Evans's initial examination, was slowness in extending plaintiff's fourth and fifth digits.[1] In January 2004, only a month after Dr. Evans first examined plaintiff, the Commissioner's consultative physician, Dr. Meltzer, conducted a comprehensive orthopedic examination. He detected only slight limitations in plaintiff's right arm mobility and slightly diminished grip strength on the right. [AR 139-144]. He observed that plaintiff had full passive range of motion in his digits but "actively will keep each finger joint flexed . . . stating he cannot open his fingers any further than that."

---

[1] Two doctors at ARMC who treated plaintiff after Dr. Evans opined that plaintiff was disabled detected diminished grip strength in his right hand, and one of those doctors also noted diminished sensation in the right hand, but the degree of diminution was not noted, and those doctors said nothing about any range of motion limitation in the right arm, hand, or digits comparable to the findings recorded (at least initially) by Dr. Evans. [AR 191, 194].

5

[AR 141]. This discrepancy led Dr. Meltzer to believe that plaintiff could open his hand all the way if he wished. [AR 143]. Dr. Meltzer also detected full range of motion in plaintiff's right wrist, excellent flat and round pinch, no muscle atrophy, and normal sensation. X-rays showed normal wrist, humeralulnar, and radial ulnar joints, with a well-healed fracture and a pin in good position. [AR 142]. Dr. Meltzer concluded that plaintiff had "recovered quite well" from his right upper extremity injury and had a "perfectly functional [right] hand," and he doubted that plaintiff had functional limitations of his right upper extremity or otherwise. [AR 143]. Regardless of whether plaintiff could fully extend his right fingers or not, Dr. Meltzer opined that plaintiff could perform light work. [AR 143].

Like Dr. Meltzer and Dr. Cortes, Dr. Evans had seen plaintiff only once when he issued his December 2003 disability opinion (and only once more before he recertified plaintiff's disability in May 2004), but Dr. Meltzer's examination was much more comprehensive and included detailed findings. In contrast, Dr. Evans's findings were general and conclusory. For example, Dr. Evans found that plaintiff had "extremely limited" right upper extremity mobility in December 2003, but he did not record the degree of range of motion measurements nor the joint(s) affected [AR 197], whereas Dr. Meltzer included all of the objective examination data in his examination report.[AR 139-144]. In addition, Dr. Meltzer's upper extremity examination findings were consistent with those of Dr. Cortes (who, like Dr. Evans, was a treating source at ARMC), and Dr. Meltzer's opinion that plaintiff could perform light work was consistent with the non-examining state agency physician's opinion. 20 C.F.R. §§ 404.1567(d), 416.957(d) (explaining that the clinical

support for an opinion and its consistency with the record as a whole are factors to be considered in weighing medical opinions).

Second, the ALJ pointed out that Dr. Evans did not conduct EMG/nerve conduction studies to document any nerve problems causing "markedly diminished sensation" [AR 197] in plaintiff's right upper extremity, and that Dr. Evans documented good range of motion of the right elbow and a grossly intact radial ulnar median nerve. [AR 19]. See Connett v. Barnhart, 340 F.3d 871, 874-875 (9th Cir. 2003) (holding that the ALJ did not err in rejecting the controverted opinion of a treating physician whose restrictive functional assessment was not supported by his treatment notes).

Third, the ALJ remarked that although Dr. Evans judged plaintiff to be "a poor candidate for job retraining" with "low potential for employment," he never actually assessed plaintiff's physical functional capacity or identified specific impairment-related functional limitations. [AR 22]. On one of the two disability forms he signed, Dr. Evans was asked to mark any applicable restrictions in weight lifting, reaching, or grasping, but he left those sections blank. He asserted that plaintiff was disabled because he was right-handed and had a "right arm reattachment." [AR 185]. Dr. Evans failure to explain how plaintiff's diagnosed impairment limits his ability to work is a permissible reason for rejecting his opinion in favor of Dr. Meltzer's detailed, well-supported opinion. See Morgan v. Commissioner of the Social Security Administration, 169 F.3d 595, 600 (9th Cir. 1999) (holding that the ALJ permissibly rejected an examining psychologist's report that did not show how the claimant's symptoms translated into specific functional deficits which precluded work activity); 20 C.F.R. § 404.1513(d), 416.913(d) (setting forth the requirements for medical

7

source reports); cf. Meanel v. Apfel, 172 F.3d 1111, 1113-1114 (9th Cir. 1999)(holding that the ALJ properly rejected a treating physician's "meager" opinion that failed to explain how the claimant's mental impairment affected her ability to work, and that the ALJ permissibly relied on the opinion of an examining physician who made specific findings regarding the claimant's work-related limitations).

**Duty to recontact treating source**

Plaintiff also contends that the ALJ breached his duty to develop the record by failing to recontact Dr. Evans to ask him to specify plaintiff's functional limitations. The ALJ's duty to develop the record further is triggered only when the evidence is ambiguous or when the record is inadequate to allow for proper evaluation of the evidence. Mayes v. Massanari, 276 F.3d 453, 459-460 (9th Cir. 2001). The evidence before the ALJ was not ambiguous. The ALJ did not reject Dr. Evans's opinion solely because he declined to specify functional restrictions, but also because his disability lacked clinical support and conflicted with the weight of the treating and examining source evidence. Plaintiff was represented by counsel during the hearing, and the ALJ assisted counsel in obtaining medical reports from ARMC after the hearing when counsel indicated that he had been unable to obtain those. [See AR 215-216, 221]. Counsel did not suggest recontacting Dr. Evans, and in the circumstances of this case the ALJ did not err in failing to do so.

**Hypothetical question**

Plaintiff argues that the ALJ erred in omitting from his hypothetical question to the vocational expert "moderate" limitations in the ability to understand, remember, and carry out detailed instructions

assessed by Dr. Hurwitz, the non-examining state agency psychiatrist. [JS 15-18].

The ALJ's job at the fifth step in the sequential evaluation procedure is to pose hypothetical questions that set out all of the claimant's impairments for the consideration of the vocational expert, who then "translates these factual scenarios into realistic job market probabilities ...." Tackett v. Apfel, 180 F.3d 1094, 1101 (9th Cir. 1999). Hypothetical questions posed to the vocational expert must accurately describe all of the limitations and restrictions of the claimant that are supported by the record. Tackett, 180 F.3d at 1101; Matthews v. Shalala, 10 F.3d 678, 681 (9th Cir. 1993). A vocational expert's response to a hypothetical question constitutes substantial evidence only if it is supported by the medical evidence. Embrey v. Bowen, 849 F.2d 418, 422 (9th Cir. 1988).

Plaintiff erroneously assumes that the ALJ was obliged to accept the limitations assessed by Dr. Hurwitz, a non-examining psychiatrist. The ALJ permissibly relied instead on the opinion of the Commissioner's examining psychiatrist, Dr. Fontana. [AR 14, 16, 159-162]. In general, an examining physician's opinion that is well-supported and not inconsistent with other treating or examining source evidence is entitled to greater weight than the conflicting opinion of a non-examining psychiatrist. See Lester, 81 F.3d at 830-831. Moreover, Dr. Fontana and Dr. Hurwitz agreed that plaintiff could perform simple, repetitive tasks; sustain those work activities during a normal work day and work week on a consistent basis; and interact appropriately with coworkers, supervisors, and the public. [AR 161, 181]. Dr. Hurwitz added that plaintiff can adapt appropriately to a variety of work setting situations and changes. [AR 181].

Both Dr. Fontana and Dr. Hurwitz expressed reservations about plaintiff's ability to understand, remember, and carry out detailed instructions. Dr. Fontana opined that plaintiff "could have difficulty" with detailed tasks, while Dr. Hurwitz opined that plaintiff would have moderate restrictions in that regard. [AR 179, 161]. This restriction does not undermine the validity of the ALJ's finding at step five. All of the alternative jobs identified by the vocational expert in response to the ALJ's hypothetical questions were unskilled jobs. [AR 219-221]. By definition, unskilled jobs are those that "need[ ] little or no judgment to do simple duties that can be learned on the job in a short period of time." SSR 83-10, WL 31251, at *7.

Plaintiff contends that two of those jobs had a reasoning level of 2 in the Dictionary of Occupational Titles ("DOT"), but that does not take those jobs out of the unskilled realm. DOT job classifications include a "General Educational Development" ("GED") component comprising three scales: Reasoning Development, Math Development, and Language Development. The GED reasoning, math, and language development scales range from Level 1 (low) to Level 6 (high). Level 2 reasoning is defined as the ability to "[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions. Deal with problems involving a few concrete variables in or from standardized situations." See DOT, Appendix C, Components of the Definition Trailer (4th ed. rev.1991). Level 2 reasoning requires the ability to use "common sense" to comply with "detailed but uninvolved instructions." "Uninvolved" means "not intricate or complex." The Random House College Dictionary, Revised Edition 704 (1980). Level 2 reasoning is consistent with the ability to perform unskilled work such as the simple, repetitive jobs that the ALJ found plaintiff capable of performing. See

Meissl v. Barnhart, 403 F.Supp.2d 981, 982-984 (C.D. Cal. 2005)(holding that a claimant who was limited to "simple tasks performed at a routine or repetitive pace" was not precluded from performing an unskilled past job with a DOT reasoning level of 2). Accordingly, plaintiff's argument lacks merit.

## Conclusion

For the reasons stated above, the Commissioner's decision is supported by substantial evidence and reflects the application of the proper legal standards. Accordingly, defendant's decision is **affirmed. IT IS SO ORDERED.**

DATED: April 18, 2007

/ S /
_____
ANDREW J. WISTRICH
United States Magistrate Judge